IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE

ARMANDO SANCHEZ CRESPO,

Debtor

CASE NO. 24-05169 (ESL)

CHAPTER 11

FILED AND ENTERED 8/7/2026

**OPINION AND ORDER**

This case is before the court upon the *Motion to Dismiss* (dkt. #123) filed by creditor Jessenia González Soto ("**González Soto**") on August 5, 2025, which seeks dismissal of the captioned case for alleged bad faith filing and because the case is a two-party dispute pursuant to 11 U.S.C. § 1112(b)(1). Also before the court are the *Motion in Response to Unsecured Creditor Jessenia González's Motion to Dismiss [Dkt. No. 123]* ("**Opposition**", dkt. #132), as supplemented (dkt. #160), the *Response to Debtor's Supplemental Motion at Dk. No 160* ("**Reply**", dkt. #161), the *Reply to Response to Supplement to Response to Unsecured Creditor Jessenia González's Motion to Dismiss [Dkt. No. 123]* ("**Sur-Reply**", dkt. #169), *Debtor's Pre-Trial Report* (dkt. #139), and *González Soto's Pre-Trial Report* (dkt. #140).

For the reasons discussed below, the *Motion to Dismiss* (dkt. #123) is GRANTED.

Factual and Procedural Background

1.	On November 27, 2024, Debtor filed a petition for relief under Subchapter V of the Bankruptcy Code (the "**Petition Date**") (dkt. #1).

2.	On January 10, 2025, González Soto filed, and thereafter amended, Proof of Claim No. 2 ("**POC No. 2**") in the unsecured amount of $438,092.00 on account of a final state court judgment. See Proof of Claim No. 2-1 and 2-2.

3.	On March 4, 2025, Debtor filed a *Reorganization Plan for Small Business Under Sub Chapter V* (the "**Plan**", dkt. #63), which reads, in pertinent part, as follows:

Debtor's primary need for relief stems from litigation he initiated against his ex-wife to recover control of another corporation to which he had loaned most of its

-1-

capital and equipment … Mrs. González … obtained a judgement for damages in the amount of $438,092 …

In this case the Debtor will file three adversary proceedings for collection of moneys owed to the Debtor, one of which is a substantial claim for money owed by Mrs. González, Debtor's ex-wife …

The Debtor is expected, by the abundance of evidence, to recover from all three defendants and plans to offer a partial offset to Mrs. González for her allowable claim. The claim against Mrs. González alone will make feasible the Plan of Reorganization. The other claims can be paid with current funds available …

Id., pp. 1-3.

4.     The *Plan* proposed the following treatment for González Soto's POC No. 2:

| Class 3 – Non-priorityGeneral unsecured creditors | Unimpaired | Unsecured claims under this Class, will be paid 100% of the allowed amount by partial setoff, without interest, against amounts claimed by Debtor at the Effective Date of the Plan. The aggregate of this partial setoff is estimated at $438,092.00. |
| --- | --- | --- |

Id., p. 8, § 4.01. The *Plan* further states the following with respect to POC No. 2: "[a]n objection will be filed for POC 2-1" (id., p. 9, § 5.01); "the principal risks [of the proposed Plan] are the collectability of the Debtor's actions against third parties, potentially the Debtor's ex-wife. However, in that respect, the Plan provides for a partial setoff of the amounts due by Mrs. González and he has funds available to pay off the other two creditors at the effective date" (id., p. 18, § 10.03); and, "[t]he Debtor's has causes of action against … Jesenia González" (id., p. 19, § 10.05).

5.     On August 5, 2025, González Soto filed the *Motion to Dismiss* (dkt. #123), seeking the dismissal of the captioned case for alleged bad-faith filing and because the case is a two-party dispute pursuant to 11 U.S.C. § 1112(b)(1). González Soto avers that the bankruptcy petition "was filed within 90 days of Gonzalez placing a judicial lien over the debtor's real estate asset with the intent to stay process of execution of a final judgment issued in favor of Gonzalez" (id., p. 7, ¶ 5), that Debtor's monthly operating reports (each a "**MOR**", and collectively "**MORs**") show that

he is solvent, has sufficient cash flow to meet his current expenses, and that the filing of the petition cannot be deemed as a real benefit for creditors. González Soto further avers that

> debtor has displayed a pattern of bad faith acts against González, derives most of his income from a single asset real estate building, has no employees and no substantial unsecured debts or obligations, other than the debt with González, that would warrant Chapter 11 protection and has displayed a bad faith attitude towards González. Furthermore, the debt arising from the two-party dispute between Gonzalez and the Debtor has absolutely no relation to Debtor's current primary source of income. … his Subchapter V Plan is not feasible as it is based and depends on an alleged claim to be submitted against González; that is barred by res judicata and other legal principles. This case involves a dispute between two parties, including González, and may be more appropriately addressed in state court. The case lacks the collective nature for creditors inherent to bankruptcy proceedings, and therefore, should be dismissed.

Id., p. 12. Attached to the *Motion to Dismiss* is (i) a *Judgment* issued by the Puerto Rico Court of Appeals (dkt. #123-1); (ii) a *Resolution* issued by the Puerto Rico Supreme Court (dkt. #123-2); and (iii) and the *Unsworn Statement Under Penalty of Perjury* of González Soto (dkt. #123-3).

6.      On August 19, 2026, the court entered an *Order and Notice Setting Hearing* (dkt. #124), setting a hearing to consider the *Motion to Dismiss*, and ordering the parties to file a report prior to such hearing. See also dkt. #128.

7.      On August 24, 2025, Debtor filed the *Opposition* recounting the procedures before and judgments rendered by the state court and his alleged rights and claims against González Soto under state law. With respect to the allegations that this case is a two-party dispute, Debtor argues that the state court judgment is final, and that he must "provide a mechanism for the payment of said claim, from his disposable income" (dkt. #132, p. 21). Attached to the *Opposition* is the *Unsworn Statement Under Penalty of Perjury* of Debtor ("**Debtor's Unsworn Statement**", dkt. #132-7) and thirteen (13) other exhibits, most of which are in Spanish.[1]

---

[1] Although Debtor filed a *Motion for Extension of Time to File a Certified Translation of State Court Documents in Support to [the Opposition]* (dkt. #133), Debtor failed to file such translations. This court will only consider the merits of those documents filed in the English language.

"It is well settled that the law incontrovertibly demands that federal litigation in Puerto Rico be conducted in English", in accordance with 48 U.S.C. § 864. Banco Popular de P.R. v. Santiago-Salicrup, 630 B.R. 374, 378 (D.P.R. 2021), citing Estades-Negroni v. Assocs. Corp. of N. Am., 359 F. 3d 1, 2-3 (1st Cir. 2004). See also 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in

8. On August 29, 2025, Debtor filed an *Urgent Motion Requesting that Unsecured Creditor Jesenia Gonz[á]lez's Motion to Dismiss [Dkt. No. 123] be DENY[sic] Due to Noncompliance with Pre-Trial Report Order [Dkt. No. 124]* (dkt. #136), which the court denied on that same date, finding that Debtor was also in default with the order at dkt. #124 (dkt. #137).

9. Also on August 29, 2025, both Debtor and González Soto filed individual pre-trial reports. See *Debtor's Pre-Trial Report*, dkt. #139; *González Soto's Pre-Trial Report*, dkt. #140. Attached to both pre-trial reports are various exhibits, most of which are in Spanish.[2]

10. On September 30, 2025, the court held a hearing on the *Motion to Dismiss*. The minutes reflect as follows:

> The court stated that the underlying facts, as evinced by state court orders, appear not to be in dispute, and advanced that it had a concern as to the applicability of *res judicata* and the Rooker–Feldman doctrines to the instant case, and whether dismissal or suspension under Section 305(a) of the Bankruptcy Code or discretionary abstention under 28 U.S.C. § 1334(c)(1) was appropriate. The court stated that it had concerns as to whether the Debtor could file actions in bankruptcy which are related to actions previously filed with and adjudicated by the state courts.
>
> … The court questioned why these state law claims should be pursued in bankruptcy court. Counsel for Debtor stated that they were integral to fund the plan. The court stated that it was not clear from the pleadings how the Debtor has a right to pursue these claims against González Soto. The court further advanced that it was concerned that this was a two-party dispute, particularly where the funding of the plan was contingent on the filing of these actions, which added weight to González Soto's claim that this case may have been filed in bad faith.
>
> The Debtor clarified that the third scenario proposed in the plan was not contingent on the filing of claims against González Soto and explained how the plan would be funded under that scenario. The court questioned why file bankruptcy and not to file these claims against González Soto in the state court. Counsel for Debtor stated that they owed money to FirstBank Puerto Rico, the IRS, and others, and that it was Debtor's obligation to pursue all claims he believed himself to have. Counsel for

---

the English language."); L. Civ. R. 5(c) ("All documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English…"); P.R. LBR 9070-1(c) ("All Exhibits and documentary evidence in Spanish or other language shall be fully translated to the English language by a certified translator."); In re Bernier, 2022 WL 17096264, at *6-7, 2022 Bankr. LEXIS 3283, at *17-18 (Bankr. D.P.R. 2022) (holding that documents not in the English language should not be considered).

[2] Ibid.

González Soto stated that the claims may be time bared. Counsel for Debtor stated they would pursue whether an amended plan may be proposed without the filing of claims.

See *Minutes of Hearing held on September 30, 2025*, dkt. #142, pp. 3-4, lines 12-11. At the conclusion of the hearing, the court granted the parties additional time to file certified English translations of Spanish-language documents and to supplement their motions and responses.

11.     On October 30, 2025, Debtor filed an *Urgent Motion for Extension of Time to File Supplement to Response to Unsecured Creditor Jessenia González's Motion to Dismiss [Dkt. No. 123] in Order to Finish Settlement Negotiations with Jessenia González* (dkt. #149), which was granted (dkt. #150).

12.     On November 13, 2025, Debtor filed a further extension of time to supplement his position to the *Motion to Dismiss* and to file an amended plan, informing that "[d]espite the parties' efforts, no settlement has been reached" (dkt. #153, ¶ 3), which was granted (dkt. #154).

13.     On November 20, 2025, Debtor filed a *Second Amended Reorganization Plan for Small Business Under Subchapter V* (the "**Amended Plan**", dkt. #159), which reads, in pertinent part, as follows:

> Debtor's primary need for relief stems from the State Court litigation he initiated against his exwife, Mrs. Jesenia Gonzalez ("Mrs. Gonzalez") and a corporation identified as Safety Route, Corp. ("SR,C").
>
> …
>
> … the Debtor decided not to pursue two of the claim's receivable, and several claims against the estate have been amended. In response to a Motion to dismiss filed by Mrs. Gonzalez the Debtor filed an amended Plan that considered three possible scenarios for the treatment of claims, considering the outcome of its most significant claim receivable, the claim to recover money lent, equipment sold, salaries, and rents from SR,C and/or of Mrs. González.
>
> After an examination of the parties' arguments discussed with the Honorable Court on a hearing held September 30, 2025, and further evaluation of the specifics of the bankruptcy case, the debtor decided to file this Second Amended Plan of Reorganization with only **one scenario**, under which Debtor will structure a payment plan with his disposable income and best effort. Any claims against unsecured creditor Jessenia Gonzalez will be filed in State Court with a special counsel authorized by this Court[1] . If Debtor prevails in any of his claims as filed in State Court, then those funds will be paid to creditors in proportional shares, after discounting prior payments under the plan.

…

The Second Amended Plan provides additional payment to unsecured creditors upon obtaining judgement in local Court on the claim receivable from Jesenia Gonzalez. The expected recovery from this claim is over $1 million dollars. Thus, the expected payoff to unsecured creditors is also 100%.

…

Debtor and Debtor's counsel are confident that the civil action proceedings in local Court will be successful and for the benefit of the estate, thus the proceeds of local Court judgement will be available to payoff (or settle) with Mrs. González and pay 100% of to the other creditors.

dkt. #159, pp. 1-5 (underline removed; boldface original). The *Amended Plan* proposes the following treatment for González Soto's POC No. 2:

| 2.04 | Class 3 - General Unsecured Claim Jesenia González (POC 2-2) | This class is comprised of unsecured creditors with claims allowed for more than $10,000.00. The allowed amount of POC2-2 of Jesenia Gonzalez is **$438,092**. |
|------|------|------|

Id., p. 9, § 2.04. And,

| Class 3 – Non-Priority General Unsecured creditors | Impaired | This class will receive 10% of the allowed claims in 36 equal monthly installments of $1,216.92 without interest commencing 30 days after the Effective Date. Upon judgement in local Court, if Debtor is successful, this unsecured class will receive the remainder of its claim balance through a setoff, subject to the amount of the judgment, and prorated with the convenience class unsecured creditors. |
|------|------|------|

Id., p. 12, § 4.01.

14. Also on November 20, 2025, Debtor filed a *Supplemental Motion to Response[sic] to Unsecured Creditor Jessenia González's Motion to Dismiss at Docket 123* ("**Supplemental Opposition**", dkt. #160), stating that he intends to prosecute his claims against Mrs. Gonzalez and/or her corporations in state court, and submitting a certified English translation of an *Order* issued on September 3, 2024, by the Puerto Rico Court of First Instance in Civil Case No. A DP2017-0064 (dkt. #160-1). The Debtor did not file any additional translations.

15. On December 4, 2025, González Soto filed the *Reply* (dkt. #161), to which Debtor filed the *Sur-Reply* (dkt. #169) on December 16, 2025, corrected on December 18, 2026 (dkt. #171). See *Informative Motion*, dkt. #172.

<u>Legal Issue</u>

Whether the petition for relief was filed in bad faith and, consequently, constitutes "cause" for dismissal under 11 U.S.C. § 1112(b)(1).

<u>Uncontested Material Facts</u>

After reviewing the record, the court finds the following material facts are uncontested:

1. Debtor and González Soto married in 2003 under the separate property system. <u>See</u> *Judgment*, dkt. #123-1, p. 10, ¶ 1.

2. In November 2011, Debtor and González Soto agreed to incorporate Safety Route Corp. ("**Safety**"), that González Soto would be the sole shareholder, officer, director, and chief executive officer, and that Debtor would not be involved in its management, capital or administration. <u>See</u> *Judgment*, dkt. #123-1, p. 10, ¶¶ 2-3.

3. Debtor and González Soto divorced in 2017. <u>See</u> *Judgment*, dkt. #123-1, fn. 1.

4. On February 6, 2017, Debtor filed a complaint for damages against González Soto, captioned Civil Case No. A DP2017-0064, requesting he be declared the sole shareholder of Safety, among other things. <u>See</u> *Judgment*, dkt. #123-1, p. 1.

5. On August 22, 2017, Debtor amended the complaint to include Safety as a co-defendant and filed a petition for derivative action and moved the court to appoint a judicial administrator and order the deposit of all corporate funds in the Clerk's Office. <u>See</u> *Judgment*, dkt. #123-1, p. 1.

6. On September 11, 2023, the Puerto Rico Court of First Instance ("**Court of First Instance**") issued and notified a *Judgment on Reconsideration* in Civil Case No. A DP2017-0064 (i) dismissing the complaint and derivative action filed by Debtor against González Soto, (ii) granting the counterclaim filed by González Soto against Debtor, and (iii) ordering Debtor to "pay González [Soto] $438,092.00 in damages for the loss of her investment in Safety, plus costs and

legal interest from the date the complaint was filed …". See *Judgment*, dkt. #123-1, p. 14, ¶¶ 1-2.

7. On April 30, 2024, the Puerto Rico Court of Appeals issued a *Judgment* in Case No. KLAN202301036 affirming the *Judgment on Reconsideration*. See dkt. #123-1, p. 23.

8. On August 2, 2024, the Puerto Rico Supreme Court issued a *Resolution* in Case No. AC-2024-46 denying certiorari review of the *Judgment*. See dkt. #123-2.

9. On September 3, 2024, the Court of First Instance issued an *Order* in Civil Case No. A DP2017-0064 directing (i) the turnover to González Soto of funds consigned with the Court of First Instance; (ii) the recording of a notice of attachment in the Puerto Rico Property Registry against Debtor's commercial property in Aguada; (iii) the garnishment of Debtor's interest in AMPHEX, *infra*; (iv) the garnishment of Debtor's bank accounts; and (v) the judicial sale of Debtor's real and personal property. See *Order*, dkt. #160-1.

10. On November 27, 2024, Debtor filed the instant petition for relief. See dkt. #1.

11. Debtor's main source of income is derived rents collected from commercial properties in Aguada. See *MOR March 2025*, dkt #82, pp. 4-5; *MOR December 2024*, dkt. #51, pp. 4-5.

12. Among the tenants from whom Debtor collects rent is AMPHEX GROUP LLC ("**AMPHEX**"), a corporation wholly owned by Debtor, for which he serves as both project manager and president. See *MOR December 2024*, dkt. #51, p. 5 (disclosing rent paid by AMPHEX); *MOR March 2025*, dkt #82, p. 5 (disclosing rent paid by AMPHEX); *Proposed Reorganization Plan for Small Business Under Sub Chapter V*, dkt. #63, p. 1, § I (A) (disclosing ownership in AMPHEX); *Amended Schedule A/B*, dkt. #47, p. 8, item no. 19 (disclosing investment in AMPHEX).

13. Debtor has disclosed assets totaling $2,031,654.14 (dkt. #47, p. 11, item no. 63), including a commercial building he administers valued at $750,000.00; his 100% ownership in AMPHEX valued at $100,000.00; receivables of $1,162,964.14; and a $1/9^{th}$ interest in the succession of Amparo Crespo Chaparro, which includes real property located in Aguada valued

at \$112,500, making Debtor's interest approximately \$12,500. See *Amended Schedule A/B*, dkt. #47, p. 6, item no. 1.1 (commercial building); p. 8, item no. 19 (investment in AMPHEX); p. 9, item no. 30 (succession participation).

14. The \$1,162,964.14 receivables disclosed as owed include the following:

| Claim | Year | Amount | Reason |
|---|---|---|---|
| Amphex Group LLC | As of Nov 2024 | \$ 25,743.37 | Balance of intercompany transactions |
| JJ Builders | 2017 | 135,900.00 | Breach of contract and professional services |
| Heriberto Guivas | 2015 | 122,580.82 | Loan (Principal \$75,000 plus estimated interest) |
| Jesenia Gonzalez Soto | 2017 | 1,040,383.32 | Loan, payroll, rents, credit cards used |
| | | **\$ 1,162,964.14** | |

See *Amended Schedule A/B*, dkt. #47, p. 13.

15. Debtor disclosed a secured debt with FirstBank Puerto Rico ("**FirstBank**") of \$261,881.00, secured by a commercial property in Aguada valued at \$750,000.00. See *Schedule D*, dkt. #22, p. 13.

16. Debtor disclosed unsecured debts of \$438,430.25, of which \$438,092.00 are owed to González Soto. See *Amended Schedule E/F*, dkt. #48, pp. 6 and 8.

17. The Claims Register reflects the following claims:

| POC No. | Creditor | Amount | Secured or Unsecured |
|---|---|---|---|
| 1-2 | FirstBank | \$262,698.38 | Secured |
| 2-2 | González Soto | \$438,092.00 | Unsecured |
| 3-4 | Internal Revenue Service | \$5,832.67 | Unsecured |
| 4-1 | Puerto Rico Department of the Treasury ("Departamento de Hacienda") | \$194.20 | Unsecured |

See Proof of Claim Nos. 1-2, 2-2, 3-4, and 4-1.

18. Although González Soto originally filed POC No. 2 as secured on account of a final state court judgment and recorded judicial order of attachment (or embargo), POC No. 2 was amended to change its status to unsecured. Compare Proof of Claim No. 2-1 with Proof of Claim No. 2-2.

19. The secured status of POC No. 2 was amended because following "preliminary discussions to simplify pending controversies between" the parties, and:

> [p]rior to filing an objection to claim number two (2), the Debtor's counsel made the approach to request that the appearing creditor amend [POC No. 2] as unsecured. The legal basis for the request is that the recorded judicial lien order was issued and presented at the Registry of Property within the 90 days of the filing of the petition.
>
> In response to the Debtor's request, the appearing **creditor has agreed to voluntarily amend its claim as unsecured**.

*Joint Motion to Inform*, dkt. #93, ¶¶ 2-4 (boldface added).

20. Debtor's only secured creditor is FirstBank. See Proof of Claim No. 1-2; *Schedule D*, dkt. #22, p. 13.

21. González Soto is Debtor's largest creditor. See Proof of Claim Nos. 1-2, 2-2, 3-4, and 4-1.

22. Debtor has more assets than liabilities. Compare *Amended Schedule A/B*, dkt. #47 with *Amended Schedule E/F*, dkt. #48 and *Schedule D*, dkt. #22.

23. Debtor's main source of income derives from the leased offices of his sole real property. See dkt. #132, p. 22 (Debtor admission). See also *MORs*, dkt. #29, 51, 58, 71, 82, 92, 94, 107, 111, 116, 127, 147, 155, 173, 178, 179, 187, 190, 196, 199.

24. Debtor's MORs show that he has enough cash flow to meet his current expenses. See *MORs*, dkt. #29, 51, 58, 71, 82, 92, 94, 107, 111, 116, 127, 147, 155, 173, 178, 179, 187, 190, 196, 199.

25. Debtor has not asserted having any employees. See *MOR December 2024*, dkt. #51 (payroll: "$-"), p. 4; *MOR March 2025*, dkt #82, p. 4 (payroll: "$-").

26. Debtor sought bankruptcy protection following González Soto's request for execution of the *Judgment on Reconsideration* issued by the Court of First Instance. See *Debtor's Unsworn Statement*, dkt. #132-7, ¶ 5 ("I decided to file the bankruptcy petition to protect among other things the my main source of income that is my only real property … when the trial court entered an order granting Mrs. González requests for execution of the Judgment by way of a

judicial sale, garnishment and sales by public auctions of other movable and the real property. The trial court also ordered notice of attachment ('anotación preventiva de embargo') in the Property Registry of Aguadilla for the amount of $250,000.00."). See also dkt. #132, p. 22 (Debtor admission); *Reorganization Plan for Small Business Under Sub Chapter V,* dkt. #63 (Debtor admission); *Second Amended Reorganization Plan for Small Business Under Subchapter V*, dkt. #159 (Debtor admission).

Applicable Law and Analysis

A.      Dismissal Pursuant to 11 U.S.C. § 1112(b), Generally

Section 1112(b) of the Bankruptcy Code, 11 U.S.C. § 1112(b), mandates, after notice and a hearing, the conversion or dismissal of a chapter 11 case, whichever is in the best interests of creditors and the estate, if the movant establishes "cause" and the case is devoid of unusual circumstances pursuant to 11 U.S.C. § 1112(b)(2). See 11 U.S.C. § 1112(b)(1). Although the Bankruptcy Code does not define "cause" as that term is used in Section 1112(b), Section 1112(b)(4) provides a non-exhaustive list of circumstances which constitute "cause" for conversion or dismissal. Because the list of causes is nonexhaustive, a case may be converted or dismissed for other causes. See, *e.g.*, In re Plaza Antillana Inc., 2014 WL 585299, at *11 (Bankr. D.P.R. 2014).

The initial burden is on the movant to argue and present evidence by a preponderance of the evidence standard to prove its position that there is cause for either conversion or dismissal of the chapter 11 case, whichever is in the best interests of creditors and the estate. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.04[4] (16th ed., 2026). "Thus, until the movant carries this burden, the statutory direction that the court 'shall convert the case to a case under chapter 7 or dismiss the case' is not operative." Id. The court, after finding cause, has broad discretion to determine whether conversion or dismissal is in the best interest of creditors and the estate. See Gilroy v. Ameriquest Mortg. Co. (In re Gilroy), 2008 Bankr. Lexis 3968, 2008 WL 4531982 (B.A.P. 1st Cir. 2008). However, if the movant proves that there is cause for dismissal pursuant to 11 U.S.C. § 1112(b)(4) by a preponderance of the evidence, the

court must find that movant has established cause. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1112.04[4] (16th ed., 2026).

Once "cause" has been established, the burden shifts to the debtor to identify unusual circumstances that evince that conversion or dismissal is not in the best interest of creditors and the estate. Even, if there are no unusual circumstances, the court may not convert or dismiss a case if the debtor establishes and the court finds that: "(1) there is a reasonable likelihood that a plan will be confirmed within a reasonable time; (2) the cause' for dismissal or conversion is something other than a continuing loss or diminution of the estate coupled with a lack of reasonable likelihood of rehabilitation; and (3) there is a reasonable justification or excuse for a debtor's act or omission and the act or omission will be cured within a reasonable time." In re Orbit Petroleum, Inc., 395 B.R. 145, 148 (Bankr. D.N.M. 2008).

B.      Lack of Good Faith (or Bad Faith) as Cause to Dismiss

In In re Costa Bonita Beach Resort, Inc., 479 B.R. 14 (Bankr. D.P.R. 2012), this court held that lack of good faith (or bad faith) in filing a chapter 11 petition constitutes "cause" to dismiss pursuant to 11 U.S.C. § 1112(b)(1). In so doing, the court also rejected the use of the mechanical checklist approach to determine lack of good faith for all cases. In pertinent part, the court stated the following regarding lack of good faith (or bad faith) as a cause for dismissal of a chapter 11 petition:

> Good faith is not a statutory requirement for the filing of a Chapter 11 petition. However, it is a requirement for a Chapter 11 plan to be confirmed. 11 U.S.C. § 1129(a)(3). The unsettled issue is whether lack of good faith (or bad faith) may constitute "cause" to dismiss a Chapter 11 petition under 11 U.S.C. § 1112(b)(1). See Ali M.M. Mojdehi & Janet Dean Gertz, The Implicit "Good Faith" Requirement in Chapter 11 Liquidations: A Rule in Search of a Rationale?, 14 Am. Bankr.Inst. L.Rev. 143 (2006). Any determination of good faith, or lack of good faith (bad faith) is fact intensive and must consider the totality of the circumstances on a case by case basis. In Chapter 11 cases the court must carefully consider the distinctions between liquidation and reorganization as both are valid objectives under the Bankruptcy Code.
>
> Several Circuits have determined that lack of good faith (or bad faith) in filing a chapter 11 bankruptcy petition constitutes "cause" to dismiss or convert a case to

Chapter 7 pursuant to 11 U.S.C. § 1112(b). See Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.), 779 F.2d 1068 (5th Cir.1986); In re Humble Place Joint Venture v. Fory (In re Humble Place Joint Venture), 936 F.2d 814 (5th Cir.1991); Carolin Corp. v. Miller, 886 F.2d 693 (4th Cir.1989); Trident Assocs. Ltd. Partenership v. Metro. Life Ins. Co. (In re Trident Assocs. Ltd. Partnership), 52 F.3d 127 (6th Cir.1995); NMSBPCSLDHB, L .P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.), 384 F.3d 108 (3rd Cir.2004); In re Albany Partners, Ltd., 749 F.2d 670 (11th Cir.1984). The First Circuit has not decided whether lack of good faith (or bad faith) in the filing of a Chapter 11 bankruptcy petition constitutes "cause" under 11 U.S.C. § 1112(b). See Fields Station LLC v. Capitol Food Corp. (In re Capitol Food Corp.), 490 F.3d 21, 24 (1st Cir.2007). One court declined the proposition that 11 U.S.C. § 1 112(b) imposes a good faith filing requirement in a SARE case. See In re Victoria Ltd. Partnership, 187 B.R. 54, (Bankr.D.Mass.1995).

The First Circuit has determined that if 11 U.S.C. § 1112(b) imposes a good faith filing requirement, then it is the movant that must establish *prima facie* that the petition was filed in bad faith before the burden shifts to the debtor. See In re Capitol Food Corp., 490 F.3d at 24 ("Although the bankruptcy court held that subsection 1112(b) imposes no good faith filing requirement, we need not address this matter in the present case. Even the courts which have found a good faith filing requirement would demand that Fields Station first make a *prima facie* showing that Capital Food filed its petition in bad faith."); Farnsworth v. Morse (In re Farnsworth), 2009 Bankr.Lexis 3699, *18, (B.A.P. 1st Cir.2009); In re Miller, 2009 Bankr.Lexis 3351, *4 (Bankr.D.Mass.2009). The First Circuit noted that, "[c]atastrophic business events, such as an imminent or threatened foreclosure on the debtor's interests in real property essential to successful reorganization efforts, are precisely the sort of imminent financial distress for which debtors routinely seek chapter 11 protection." In re Capitol Food Corp., 490 F.3d at 25 citing In re Liberate Techs., 314 B.R. 206, 216 (Bankr.N.D.Cal.2004). The First Circuit also observed that a good faith petition must seek to preserve or create some value that would otherwise be lost outside of bankruptcy and that it is not bad faith to seek to gain an advantage from declaring bankruptcy. Id. at 25.

The determination of whether the movant has established *prima facie* that there is a lack of good faith (or bad faith) in the filing of a bankruptcy petition is a fact intensive inquiry in which the court analyzes the totality of the circumstances. See In re Farnsworth, 2009 Bankr.Lexis 3699, *20 citing Marrama v. Citizens Bank of Mass. (In re Marrama), 430 F.3d 474, 482 (1st Cir.2005) *aff'd*, 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007). Lack of good faith or bad faith is atypical conduct that constitutes an abuse of the bankruptcy process. See Marrama v. Citizens Bank, 549 U.S. 365, 375, 127 S.Ct. 1105, 166 L.Ed.2d 956, fn. 11 (U.S.2007); Berliner v. Pappalardo (In re Puffer), 674 F.3d 78, 82 (1st Cir.2012). Good faith is driven by the congressional intent of Chapter 11 relief. "Chapter 11 is designed to offer greater recovery for creditors and equity owners than liquidation in a Chapter 7 case by providing a means by which financially distressed businesses or individuals may restructure their finances by obtaining confirmation

-13-

of a plan which provides either a continuation of the business, or retention or orderly sale of assets, and exiting bankruptcy relieved of burdensome debts and obligations." Hon. Nancy C. Dreher & Hon. Joan N. Feeney, Bankruptcy Law Manual, § 11.1 (5th ed. 2011).

The totality of the circumstances test cannot be reduced to a mechanical checklist (irrespective of the chapter or whether it is in the filing of the petition and/or the confirmation of the plan). See In re Puffer, 674 F.3d at 81 ("The totality of the circumstances test cannot be reduced to a mechanical checklist, and we do not endeavor here to canvass the field and catalogue the factors that must be weighed when determining whether a debtor has submitted a Chapter 13 plan in good faith"). The First Circuit has determined that, "in all events, good faith is a concept not a construct. Importantly, it is a concept that derives from equity. This matters because equitable concepts are particularly insusceptible to per se rules." In re Puffer, 674 F.3d 78, 82. Thus, this court, in conformity with the determinations of the First Circuit in In re Puffer rejects the mechanical checklist approach for a determination of lack of good faith (or bad faith) for all cases, irrespective of whether they are SARE cases. Good faith is an abstract idea generalized from particular circumstances and not a working assumption.

Id., at 39-40. See also Plaza Antillana, 2014 Bankr. LEXIS 634, 2014 WL 585299 (finding that movant established *prima facie* that debtor filed its bankruptcy petition in bad faith, and stating that "filing for bankruptcy on the eve of a consented foreclosure, without ongoing operations and inability to service the secured debt, is atypical conduct which constitutes an abuse of the bankruptcy process."); In re Rodriguez, 2022 Bankr. LEXIS 1341, 2022 WL 1308081 (Bankr. D.P.R. 2022) (finding cause pursuant to 11 U.S.C. § 1112(b) for filing a petition in bad faith. No "unusual circumstances" were demonstrated); In re Ginorio, 2024 WL 739327, at *7-8 (Bankr. D.P.R. 2024).

This court's analysis of bad faith as a cause for dismissal of a bankruptcy petition was cited with approval and applied by the U.S. Bankruptcy Appellate Panel for the First Circuit (the "**Panel**") in La Trinidad Elderly LP SE v. Loiza Ponce Holdings LLC (In re La Trinidad Elderly LP SE), 627 B.R. 779 (B.A.P. 1st Cir. 2021). In pertinent part, the Panel stated the following:

The issue of whether lack of good faith ("bad faith") constitutes cause for dismissal is "unsettled," and "debated." The First Circuit "has expressly declined to decide" the issue. Nonetheless, "[t]here is a well-developed body of case law that holds that chapter 11 petitions can be dismissed for lack of good faith." Several courts of appeals have determined that lack of good faith (or bad faith) in filing a chapter 11 petition constitutes "cause" to dismiss or convert a case under § 1112(b). In holding

-14-

that lack of good faith could constitute cause for dismissal, the Third Circuit explained:

> Four factors guide our adoption of a good faith standard—the permissive language of § 1112(b), viewed in light of its legislative history; the decisions of our sister courts of appeals; the equitable nature of bankruptcy; and the purposes underpinning Chapter 11.

The legislative history of the statute reflects that "[t]he court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases."

"[T]he overwhelming majority of courts considering the issue agree that an implicit good faith filing requirement exists under § 1112(b), and that a Chapter 11 case may be dismissed for cause if it was filed in bad faith." "The equitable nature of [the 'for cause'] determination supports the construction that a debtor's lack of 'good faith' may constitute cause for the dismissal of a petition." Most bankruptcy courts and at least one district court within this circuit that have considered the issue in published opinions have also concluded that bad faith constitutes cause for dismissal. The Panel has not yet addressed this issue in the chapter 11 context, although it has previously ruled that lack of good faith is grounds for dismissal of a chapter 13 petition.

We are persuaded by the abundant, well-reasoned authority holding that lack of good faith can constitute cause for dismissal of a chapter 11 petition under § 1112(b). Accordingly, the bankruptcy court below did not commit error when it so ruled.

Id., at 799-800 (citations omitted).

C.      Relevant Considerations in Determining Lack of Good Faith (or Bad Faith)

In La Trinidad, the Panel further observed that "[w]hile there is no single formulation of what constitutes lack of good faith (or bad faith), courts have concluded that the good faith determination involves a fact-intensive inquiry" (id., at 800), and applied the following eight-factor test:

> (1)     the debtor has only one asset;
> (2)     the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
> (3)     the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
> (4)     the debtor's financial condition is, in essence, a two[-]party dispute between the debtor and secured creditors which can be resolved in the pending state court foreclosure action;

-15-

(5)    the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6)    the debtor has little or no cash flow;

(7)    the debtor cannot meet current expenses, including the payment of personal property and real estate taxes;

(8)    the debtor has no employees.

Id., at 800-801, quoting In re PM Cross, LLC, 494 B.R. 607, 618 (Bankr. D.N.H. 2013). All of the factors need not be present. See id.

D.    Whether the Factors Support a Finding that the Petition was Filed in Bad Faith

With this framework in mind, the court will consider whether the totality of the circumstances indicate that the Debtor's bankruptcy petition was filed in bad faith, as supported by the record and the uncontested facts in this case.

The first and third factors are not present. Debtor owns various assets in addition to the sole real property (*Amended Schedule A/B*, dkt. #47). Although Debtor's primary source of income is derived from that real property, and said property is the object of a future judicial sale (see, *Order*, dkt. #160-1), Debtor claims substantial assets in receivables. See *Amended Schedule A/B*, dkt. #47, p. 13 (receivables of $1,162,964.14). The court will state no opinion as to Debtor's likelihood of success in pursuing such receivables. The sixth and seventh factors are also not present. Debtor has more assets than liabilities, and Debtor's MORs evince that he has enough cash flow to meet his current expenses. Compare *Amended Schedule A/B*, dkt. #47 with *Amended Schedule E/F*, dkt. #48 and *Schedule D*, dkt. #22. See also *MORs*, dkt. #29, 51, 58, 71, 82, 92, 94, 107, 111, 116, 127, 147, 155, 173, 178, 179, 187, 190, 196, 199. Consequently, Debtor has sufficient cash flow and assets to meet his current expenses.

With respect to the remaining factors, the court finds that the second factor is present. Debtor has few unsecured creditors, whose claims are small in relation to those of González Soto. Although González Soto's claim is unsecured, it is nearly twice that of FirstBank's secured claim and substantially larger than the other two (2) unsecured claims. See Proof of Claim Nos. 1-2, 2-2, 3-4, and 4-1. In so finding, this court will not consider the merits of the alleged judicial lien as González Soto voluntarily agreed to treat POC No. 2 as unsecured. See *Joint Motion to Inform*,

dkt. #93, ¶¶ 2-4. The <u>fourth</u> factor is also present. Debtor's financial condition is, in essence, a two-party dispute between Debtor and González Soto, which has been addressed, at least in part, through the affirmed *Judgment on Reconsideration*. To the extent that Debtor believes he possesses additional claims against González Soto, those claims may be pursued in the appropriate non-bankruptcy forum, as is Debtor's intent. <u>See</u> *Supplemental Opposition*, dkt. #160; *Amended Plan*, dkt. #159, p. 12, § 4.01. The <u>fifth</u> factor is present; the timing of this bankruptcy case is meant to delay or frustrate González Soto's legitimate efforts to execute the affirmed *Judgment on Reconsideration*. Finally, the <u>eighth</u> factor is also present; Debtor has not asserted that he or his wholly owned corporation has any employees.

Considering the totality of the circumstances, González Soto has established a *prima facie* case that the instant petition was filed in bad faith. The record demonstrates that this case is, at its core, a two-party dispute filed to delay or frustrate González Soto's legitimate efforts to enforce the affirmed *Judgment on Reconsideration*. Debtor's arguments to the contrary neither rebut the foregoing facts nor support a finding that the petition was filed in good faith. As noted above, bankruptcy relief must serve a legitimate bankruptcy purpose by preserving or creating value that would otherwise be lost outside of bankruptcy. Here, the record reflects that any potential increase in the value of the estate depends on the outcome of future state court litigation, not on the protections or processes afforded by bankruptcy. Accordingly, Debtor has failed to demonstrate a valid bankruptcy purpose for maintaining this case. Under these circumstances, dismissal, rather than conversion, is in the best interests of the estate.

Conclusion

The court concludes that González Soto has established a *prima facie* case that Debtor filed this bankruptcy petition in bad faith, which constitutes "cause" for dismissal under 11 U.S.C. § 1112(b)(1).

For the reasons stated herein, the *Motion to Dismiss* (dkt. #123) is GRANTED and the case is hereby DISMISSED.

-17-

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 7th day of August 2026

Enrique S. Lamoutte
United States Bankruptcy Judge